UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALMA RAMIREZ, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF GILROY, et al.,<br><br>    Defendants. | Case No. 17-cv-00625-VKD<br><br>**PRETRIAL ORDER RE MOTIONS IN LIMINE AND PLAINTIFFS' MOTION TO BIFURCATE LIABILITY AND DAMAGES** |

The Court held a pretrial conference in this matter on February 26, 2020. Dkt. No. 115. This order resolves the parties' motions in limine and plaintiffs' conditional motion to bifurcate liability and damages (Dkt. Nos. 64, 65, 66, 67, 68, 69, 70, 71, 72, 74, 75, 76, 77, 78, 81). The Court will issue separate orders regarding the parties' proposed jury instructions (Dkt. No. 94) and other matters discussed during the pretrial conference.

## I. MOTIONS IN LIMINE

The Court resolves the parties' motions in limine as follows:

### A. Plaintiffs' Motion in Limine No. 1 (Tattoos/Gang Affiliation)

Plaintiffs move to exclude any evidence that refers to Mr. Alvarez's tattoos or alleged gang affiliation or activity. Dkt. No. 74. This motion is granted in part and denied in part.

The Court will permit evidence of the dispatch communications (audio and data) received by Officer Moon, as those communications constitute some of the information he had at the time of the incident and are therefore relevant to evaluating the reasonableness of his conduct. Similarly, the Court will permit Officer Moon to testify (and be cross-examined) about how the dispatch communications he received informed his actions, and will permit expert testimony on

how law enforcement officers in Officer Moon's position are trained to account for information of the type contained in the dispatch communications to the extent those expert opinions have been disclosed as required under Rule 26. *See Watson v. City of San Jose*, 765 Fed. Appx. 248, 250–51 (9th Cir. 2019) (finding district court did not abuse discretion in admitting evidence of information known to officers at time of incident and evidence of training and experience that informed their reaction to that information).

The Court excludes evidence of Mr. Alvarez's tattoos (except to the extent those tattoos appear in images or videos that are admitted for other purposes), and excludes all other evidence of Mr. Alvarez's alleged gang affiliation or gang activities as unduly prejudicial. The Court notes that defendants represent that they do not intend to offer this evidence at trial for any purpose, except for impeachment if plaintiffs open the door to such evidence. *See* Dkt. No. 84 at 9.

### B. Plaintiffs' Motion in Limine No. 2 (Drug Use)

Plaintiffs move to exclude any evidence that refers to Mr. Alvarez's past or present drug use, including the toxicology report showing that at the time of his death Mr. Alvarez had some quantity of hydrocodone in his system. Dkt. No. 75. The motion is granted.

Defendants argue that "evidence that there was Hydrocodone in [Mr. Alvarez's] system can be argued to have affected his judgment which could corroborate Ofc. Moon's version of events as to [Mr. Alvarez's] actions." Dkt. No. 85 at 2. However, defendants concede that they have no evidence of how much hydrocodone was in Mr. Alvarez's system or of how any particular amount of that drug might produce the effects defendants say Officer Moon observed. *See* Dkt. No. 119 at 29:4-10. Accordingly, the justification defendants offer for admission of this evidence is entirely speculative and certainly insufficient to overcome the prejudicial effect such evidence of Mr. Alvarez's drug use might have.

### C. Plaintiffs' Motion in Limine No. 3 (Criminal History)

Plaintiffs move to exclude any evidence that refers to Mr. Alvarez's criminal history, including the existence of a criminal domestic violence protective order that required him to stay away from Sovonnah Flores at the time of the incident. Dkt. No. 76. Defendants stipulate that they seek admission of evidence of Mr. Alvarez's adult criminal history only, and not his juvenile

criminal history. Dkt. No. 119 at 30:21–31:9. Plaintiffs' motion is granted in part with respect to the question of liability; the Court will defer ruling on the motion with respect to the question of damages.

On the question of liability, defendants argue that *all* of Mr. Alvarez's adult criminal history (summarized at Dkt. No. 86 at 2–3) is relevant to liability because it suggests he had the motive and intent to behave aggressively towards Officer Moon in order to evade capture. Specifically, they argue that Mr. Alvarez's criminal history was sufficiently serious that the prospect of imminent arrest for domestic violence and/or violation of the protective order may explain why, according to Officer Moon, Mr. Alvarez pretended to reach for a weapon in his waistband and then charged at Officer Moon in order to intimidate him. Dkt. No. 86 at 6–7; Dkt. No. 119 at 32:10-17.

The proposed expert testimony of defense expert Scott Seaman provides some support for defendants' theory. According to Mr. Seaman, "Officers are trained that suspects will, and do, make movements to distract, intimidate, or affect the actions of a police officer, particularly when there is a one-on-one confrontation, as opposed to when a subject faces multiple officers." Dkt. No. 84-1, Ex. C at 16. In addition, Mr. Seaman says, "[O]fficers are taught to understand that a suspect, of any size, may have the ability to attack and seriously injure or kill an officer or disarm an officer of his weapon, particularly if the suspect has, among other dynamics, a high degree of motivation, skill or a lack of fear." *Id.* It is undisputed that Officer Moon had no information about any of Mr. Alvarez's criminal history at the time of the incident. Nevertheless, the Court agrees that evidence that tends to make one party's version of events more or less probable is relevant. *Boyd v. City and Cty. of San Francisco*, 576 F.3d 938, 944–45 (9th Cir. 2009). If Mr. Alvarez had a motive and intent to evade capture, evidence supporting such motive and intent could be relevant as it would tend to support Officer Moon's testimony that Mr. Alvarez behaved aggressively towards him. However, defendants have not shown that Mr. Alvarez's adult criminal history—a single misdemeanor conviction for petty theft, his prior arrests, or the pending charges and investigations against him—plausibly support such motive and intent. Defendants concede that there were no warrants out for Mr. Alvarez's arrest and that he was not a fugitive. Dkt. No.

119 at 38:10–39:1. This criminal history is simply too limited, and the prospect of future charges too speculative, to support defendants' contention that Mr. Alvarez had a motive to evade capture because he faced a significant period of incarceration if he was ultimately charged and convicted of the offenses for which he was under investigation. *Id.*; Dkt. No. 86 at 6–7. Even if Mr. Alvarez's criminal history were relevant to the question of liability, the Court finds that the prejudicial effect of the evidence outweighs its limited relevance on the question of liability, as there is a serious risk that the evidence will be misused or misconstrued as evidence of Mr. Alvarez's character or propensity to act. Fed. R. Evid. 403, 404.

The criminal domestic violence protective order is another matter. As represented to the Court, the protective order prohibited Mr. Alvarez from contacting Ms. Flores, except for peaceful contact for child custody issues. Dkt. No. 86 at 3. His presence at her apartment on the date of the incident appears to be a violation of that order, and Mr. Alvarez could have reasonably expected to be arrested, charged, and punished for that violation. Accordingly, the Court concludes that evidence of the existence and terms of the protective order are relevant and admissible on the question of liability for the limited purpose of showing that Mr. Alvarez may have had a motive or intent to evade capture by law enforcement when he encountered Officer Moon. The prejudicial nature of this evidence does not outweigh its relevance, particularly given that the Court has already concluded that the content of the dispatch communications, which refer to an alleged domestic violence incident in progress, is also admissible.

On the question of damages, the Court defers ruling on plaintiffs' motion at this time. Some evidence of Mr. Alvarez's adult criminal history may be relevant to plaintiffs' claims about the value of their lost relationships. For example, defendants suggest that Mr. Alvarez's criminal history involving domestic violence against Ms. Flores tends to suggest that the children she and Mr. Alvarez share likely suffered a loss that is not as great as the children may claim. Dkt. No. 86 at 8–9. Neither child witnessed the alleged domestic violence (H.A. was not born, and L.A. was at most only 7 months old), *see id.* at 2–3, 9, but defendants may be able to show that it is proper for the jury to draw negative inferences regarding damages from evidence of the violence Mr. Alvarez allegedly committed against the children's mother. Defendants also says that the criminal

4

protective order against Mr. Alvarez would have prevented him from having contact with his children until November 2018 and that this prohibition should factor into the calculation of damages.

As explained below, the Court will bifurcate the issues of liability and damages and will defer ruling on whether additional evidence of Mr. Alvarez's adult criminal history is admissible for purposes of damages. *See infra* Section II.

### D. Plaintiffs' Motion in Limine No. 4 (Agency Findings)

Plaintiffs move to exclude evidence of "findings by any agency," including specifically: (1) the Santa Clara County District Attorney's conclusion that Officer Moon's use of force against Mr. Alvarez was justified, reasonable, or not criminal; (2) the Santa Clara County District Attorney's review of Officer Moon's conduct and decision not to bring charges against him; (3) the City of Gilroy's review of Officer Moon's conduct and conclusion that Officer Moon's use of force against Mr. Alvarez was justified, reasonable, or consistent with City policies. Dkt. No. 77 at 2. This motion is granted in part and denied in part.

The Court excludes evidence of the above-referenced findings and conclusions of the Santa Clara County District Attorney and the City of Gilroy or any other agency including the Gilroy Police Department, as those findings and conclusions are not relevant to any issue in the case. Both parties may offer otherwise admissible evidence of whether Officer Moon's conduct did or did not comport with relevant policies, practices, training, or other norms of behavior without opening the door to evidence of the findings and conclusions of these local agencies.

Plaintiffs move to exclude not only agency findings or conclusions, but also the fact of any investigation by the District Attorney or the City, while both parties wish to be able to offer evidence of statements made by Officer Moon and witnesses during the investigation. *See id.* at 5; Dkt. No. 87 at 1–2. At the pretrial conference, the parties agreed that it would be impractical to entirely avoid reference to the existence of an "investigation." Plaintiffs explained that they should be permitted to elicit evidence of changes or inconsistencies in Officer Moon's statements at different points in time, and that the context in which he gave those statements (e.g., formal or informal, immediately following the incident or after a period of reflection) bear on how the jury

5

may credit particular statements. Dkt. No. 119 at 61:13–64:2. Defendants explained that they principally are concerned that plaintiffs will elicit evidence that Officer Moon gave some statements in the presence of counsel or after an opportunity to consult with counsel, and that such evidence might suggest to the jury that Officer Moon consulted counsel because he engaged in misconduct, when in fact he is entitled to consult with counsel. *Id.* at 64:13–66:14.

The Court agrees with the parties that references to "investigation" of the incident must be permitted. The parties and their witnesses shall take care to describe such investigation or investigations in neutral terms, so as not to suggest that a particular investigation contemplated the possibility of criminal prosecution or that it exonerated Officer Moon of all misconduct or reached any other conclusion. The Court agrees with plaintiffs that evidence of the timing and context of Officer Moon's statements about the incident are relevant and admissible. Plaintiffs represent that they have no intention of arguing or suggesting that Officer Moon consulted counsel because he or some relevant authority believed he had engaged in misconduct. The Court accepts this representation. The Court will consider a limiting instruction of the type defendants proposed during the pretrial conference if defendants wish to propose one.

### E. Plaintiffs' Motion in Limine No. 5 (Paternity of Minor Children)

Plaintiffs move to exclude any evidence that refers to one or both minor plaintiffs as Mr. Alvarez's "purported" children or in any other manner that calls into question their paternity. Dkt. No. 78. The motion is granted.

Defendants stipulate that they do not challenge minor plaintiffs' standing based on lack of paternity; however, defendants say that there may be impeachment evidence that involves the question of paternity. Dkt. No. 88; Dkt. No. 119 at 70:1-25. The Court is skeptical that such evidence is relevant to any issue in the case, and defendants have made no showing that it is. Unless and until such showing is made, the evidence is excluded.

### F. Defendants' Motion in Limine No. 1 (Other GPD Incidents)

Defendants move to exclude evidence of unrelated incidents, shootings, citizen's complaints, lawsuits, or internal affairs investigations involving the Gilroy Police Department or any of its officers, including Officer Moon. Dkt. No. 64. Defendants move specifically to exclude

1  evidence referring to a 2008 incident involving Officer Rodriguez, who is a witness in this case.

2  Plaintiffs do not oppose the motion, although they reserve the right to use this evidence for

3  impeachment if any witness testifies falsely that no such incidents, etc. occurred. Dkt. No. 95 at

4  1–2. The motion is granted except to the extent any witness provides specific testimony that may

5  be impeached by specific evidence, as discussed at the pretrial conference. *See* Dkt. No. 119 at

6  71:1–73:24.

### G. Defendants' Motion in Limine No. 2 (Other Reports of Use of Force)

Defendants move to exclude evidence of or questioning during voir dire regarding media and other reports of police use of excessive or deadly force. Dkt. No. 65. The motion is granted in part and denied in part.

As a general matter, the Court excludes evidence of and references to other specific incidents of police use of excessive or deadly force unrelated to the events at issue in this case as irrelevant and potentially prejudicial. However, the Court will permit limited questioning of prospective jurors during voir dire regarding whether and how their exposure to information, including media reports, of other officer-involved shootings does or does not impact their ability to be fair and impartial in this case. In addition, the Court will permit limited testimony regarding other matters in which the parties' respective police procedures experts have offered opinions for the purpose of establishing the experts' qualifications and experience. Finally, the Court will afford counsel for both sides some flexibility during closing argument to refer generally to matters of common knowledge not in evidence, so long as those references are consistent with Ninth Circuit guidance that limits such argument to matters that are not unfairly inflammatory or likely to confuse the jury. *See Tenorio v. United States,* 390 F.2d 96, 99 (9th Cir.), *cert. denied,* 393 U.S. 874 (1968) ("Counsel are entitled to a reasonable degree of latitude in the presentation of argument, and the prosecutor's comment concerning 'the destruction and the human waste which arises from the use of heroin' contained nothing more than that which is within the common knowledge of all reasonable people."); *see also United States v. Candelaria*, 704 F.2d 1129, 1132 (9th Cir. 1983) (permitting prosecution to respond to defense argument that defendant's alleged threat was a joke, by arguing "in this day [and] age when people are subjected to threats, to bombs

7

in airplanes . . . . [T]his is an age when you don't joke about things like that").

**H. Defendants' Motion in Limine No. 3 (Threat/Use of Force against Ms. Flores)**

Defendants move to exclude evidence of any threatened or actual use of force against Ms. Flores or evidence that she was placed in handcuffs. Dkt. No. 66. If, as the Court expects, neither party offers any of Ms. Flores's testimony or statements in evidence during trial, the Court will exclude this evidence. However, if Ms. Flores's testimony or statements are offered in evidence, the context in which she gave such testimony or statements may be relevant to the jury's assessment of that evidence. At this time, the Court defers ruling on this motion.

**I. Defendants' Motion in Limine No. 4 (Post-Incident Body Camera Footage)**

Defendants move to exclude evidence of specific portions of the video and audio from the body cameras of Officers Moon, Rodriguez, and Silva. Dkt. No. 67. Specifically, defendants move to exclude the following video and/or audio:

1. Officer Moon – audio only for 2 minutes of body camera video
2. Officer Rodriguez – video and audio for 8 minutes and 30 seconds of body camera video
3. Officer Silva – video and audio from first 4 minutes of body camera video

*Id.* at 3–5. Plaintiffs argue, among other things, that video and audio that show what Officer Moon said or did not say immediately following the incident bears directly on his credibility regarding whether he believed Mr. Alvarez was armed. Dkt. No. 102 at 2. The Court denies this motion without prejudice at this time.

The Court has reviewed the video and audio samples submitted with defendants' motion in limine. The body camera video and audio are difficult to see and hear, perhaps due to the quality of the medium. During the pretrial conference, the parties agreed to review the video, audio, and images that each proposes to offer in evidence and to confer further in an effort to narrow or eliminate disputes about admissibility. If disputes remain, defendants may renew their motion.

**J. Defendants' Motion in Limine No. 5 (Video and Photos of Mr. Alvarez)**

Defendants move to exclude unduly graphic or cumulative photographic or video evidence depicting Mr. Alvarez's post-shooting injuries. Dkt. No. 68. Plaintiffs respond with a list of

specific autopsy photographs that they wish to use and generally argue for admissibility of eight video clips. Dkt. No. 99. The Court denies this motion without prejudice at this time. As with the disputed body camera video and audio, the parties shall confer further in an effort to narrow or eliminate disputes about admissibility. If disputes remain, defendants may renew their motion.

### K. Defendants' Motion in Limine No. 6 (Unarmed)

Defendants move to exclude evidence that Mr. Alvarez was unarmed at the time of the incident. Dkt. No. 69. This motion is denied.

The fact that Mr. Alvarez was unarmed is relevant to the jury's assessment of Officer Moon's credibility. Plaintiffs dispute that Officer Moon saw Mr. Alvarez reaching into his waistband for a weapon, and the fact that there was, in fact, no weapon in Mr. Alvarez's waistband tends to support plaintiffs' version of events and undermine Officer Moon's contention that his belief Mr. Alvarez was armed was reasonable. Evidence that tends to make one party's version of events more or less probable is relevant. *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079–80 (9th Cir. 2014) (evidence decedent was not armed is probative of whether officer's testimony is credible); *see also Boyd*, 576 F.3d at 944–45. Moreover, were the Court to permit Officer Moon to testify that he saw Mr. Alvarez reaching into his waistband as if for a weapon without permitting evidence that Mr. Alvarez was not armed, the jury would likely be left with the incorrect impression that Mr. Alvarez, in fact, had a weapon in his waistband. The concerns defendants raise are best addressed by means of an appropriate jury instruction.

### L. Defendants' Motion in Limine No. 7 (Clark Expert Testimony)

Defendants move to exclude the proposed testimony of plaintiffs' expert Roger Clark. Dkt. No. 70. The motion is granted in part and denied in part.

*First*, defendants argue that Mr. Clark should be precluded from testifying about any opinions not disclosed in his Rule 26 expert report, even if those opinions were disclosed during his deposition. *Id.* at 3. Plaintiffs argue that Mr. Clark should be permitted to testify at trial to opinions expressed in his Rule 26 expert report *or* during his deposition. Dkt. No. 100 at 4. Defendants do not identify any particular opinions that Mr. Clark proposes to give but which defendants believe were not adequately disclosed.

Rule 26(a)(2) requires a party to disclose the identity of any person it intends to call as an expert witness and to provide "a written report prepared and signed by the witness[,] . . . contain[ing] a complete statement of all opinions to be expressed and the basis and reasons therefor." Fed. R. Civ. P. 26(a)(2). "A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any . . . information not so disclosed." Fed. R. Civ. P. 37(c)(1); *Torres v. City of Los Angeles*, 548 F.3d 1197, 1212–14 (9th Cir. 2008); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

A party may not cure a failure to disclose an expert opinion in a written report by supplementing the expert's disclosure with later deposition testimony. *See Ciomber v. Coop. Plus, Inc.,* 527 F.3d 635, 642 (7th Cir. 2008); *Garrison v. New Fashion Pork LLP*, No. 18-CV-3073-CJW-MAR, 2020 WL 1318806, at *5 (N.D. Iowa Jan. 23, 2020); *Scholl v. Pateder*, No. 1:09-CV-02959-PAB, 2011 WL 3684779, at *4 (D. Colo. Aug. 22, 2011). Accordingly, Mr. Clark may not testify to opinions not disclosed in his written expert report, unless *defendants* solicited those opinions from him in his deposition. Mr. Clark may not testify to opinions he volunteered or that were solicited by *plaintiffs* in his deposition.

*Second*, defendants argue that Mr. Clark should not be permitted to offer an opinion criticizing Officer Moon's conduct up to the point Mr. Alvarez descended the stairs at the apartment complex because Mr. Clark made certain concessions during his deposition that undermine his critique. Dkt. No. 70 at 5. Defendants' motion on this point is denied, as Mr. Clark's alleged concessions are proper material for cross-examination but do not justify exclusion of Mr. Clark's testimony.

*Third*, defendants argue that Mr. Clark should not be permitted to testify regarding his view of the facts or to give his opinion as to which side's version of disputed events is most likely or most credible. *Id.* at 5–6. Defendants' motion on this point is granted. Mr. Clark may make clear that his opinions are based on specific assumptions or understandings about the facts or, where appropriate, based on specific hypotheticals; however, he may not testify to any opinions about what the facts are.

*Fourth*, defendants argue that Mr. Clark should not be permitted to testify regarding his second and fifth opinions because those opinions concern plaintiffs' *Monell* claims for failure to train, which have been dismissed. This motion is granted. Mr. Clark may testify regarding the content of relevant training to the extent such training reflects applicable standards and practices, but he may not opine that the Gilroy Police Department failed to adequately train its police officers or Officer Moon in particular.

*Fifth,* defendants argue that Mr. Clark should not be permitted to give his opinions about what the law is or whether particular conduct does or does not constitute negligence or excessive force, and that he should not be permitted to testify outside the scope of his expertise. *Id.* at 6–10. Defendants' motion is granted in part and denied in part on these points.

Expert testimony that concerns an ultimate issue for the jury to decide is not per se improper. Fed. R. Evid. 704(a); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). However, an expert may not give an opinion that amounts to a legal conclusion or testify regarding what the law requires. *Hangarter*, 373 F.3d at 1016. Here, Mr. Clark (and any other expert) must avoid using specialized legal terms, such as "excessive force," "battery," or "negligence" in testifying about his opinions in this case, so as not to suggest to the jury the conclusion they should reach on plaintiffs' claims. Whether an expert may use other words that have both lay and legal meaning, such as "reasonable" or "unreasonable," is a more difficult question, and one on which different courts have reached different conclusions. *Compare, e.g.*, *Estate of Bojcic v. City of San Jose*, No. C05 3877 RS, 2007 WL 3314008, at *3 (N.D. Cal. Nov. 6, 2007) (expert may not offer opinion that officer "acted unconstitutionally or exercised 'excessive force,'" but may use "the terms 'reasonable' or 'unreasonable' in his testimony" so long as he avoids using "language in the form of a legal conclusion") *with Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1198 (C.D. Cal. 2015) ("Although the Court finds that Clark is qualified to opine as to whether the officers' use of force was excessive or unreasonable, the Court concludes that such testimony should be explored through hypothetical questioning so as to avoid invading the province of the jury."). In this case, the parties' respective experts must avoid using judicially defined or legally specialized terms, and they must not testify that certain conduct was

11

or was not unlawful or unconstitutional. The Court will not absolutely prohibit use of lay terms, such as "reasonable" or "unreasonable," so long as it is clear that the expert is using such terms in the context of discussing how the conduct compares to relevant procedures, policies, practices, experience, or norms of conduct, and not giving an opinion regarding whether the conduct does or does not meet a specific legal standard.

In addition, Mr. Clark may not testify about matters outside his specialized knowledge or expertise. For example, he may not testify that Officer Moon's flashlight blinded Mr. Alvarez, but he may testify (if the opinion is otherwise properly disclosed) about police practices or procedures involving shining a flashlight in a suspect's face. On the other hand, Mr. Clark may testify based on matters within his knowledge or experience, such as the content of the POST guidelines and whether Officer Moon's conduct was consistent or inconsistent with such guidelines. Finally, Mr. Clark may not testify as to his own personal beliefs, untethered to any procedures, policies, practices, experience, or norms of conduct.

**M.   Defendants' Motion in Limine No. 8 (Critique of Mr. Alvarez's Detention)**

Defendants move to exclude evidence of or references to whether legal justification existed for Officer Moon to detain Mr. Alvarez. Dkt. No. 71. Plaintiffs agree that no such evidence should be admitted. Dkt. No. 97. The motion is granted. The Court will separately determine whether to give the jury instruction defendants request at page 5 of their motion.

**N.   Defendants' Motion in Limine No. 9 (Incorrect Standard re Use of Force)**

Defendants move to exclude testimony of plaintiffs' expert Roger Clark that an officer cannot use deadly force until the officer actually sees a weapon in a subject's possession, which defendants say amounts to an incorrect statement of the law. Dkt. No. 72. This motion is granted in part and denied in part.

As explained above with respect to Defendants' Motion in Limine No. 7, Mr. Clark may not testify as to what the legal standard is. *See supra* Section I.L. The Court will instruct the jury regarding the standards that apply to plaintiffs' claims. However, Mr. Clark may testify as to whether Officer Moon's conduct complied with applicable procedures, policies, practices, experience, or norms of conduct.

12

1    With respect to Mr. Clark's statement during deposition that Officer Moon should not have used deadly force unless he saw Mr. Alvarez with a weapon, Mr. Clark may not testify that this is what the law requires in all circumstances, and he may not assert his opinion as a legal conclusion. However, if the opinion is otherwise properly disclosed and supported (i.e., it is not merely his personal opinion), Mr. Clark may testify that Officer Moon's use of deadly force *in the circumstances presented in this specific case* was not appropriate. The Court will separately determine whether to give the disputed jury instruction defendants request at page 3 of their motion.

## II. PLAINTIFFS' MOTION TO BIFURCATE LIABILITY AND DAMAGES

Plaintiffs move to bifurcate liability and damages in this case because the Court has concluded that evidence of Mr. Alvarez's criminal history (beyond the existence of the criminal domestic violence protective order entered against him) and his relationship with his children's mother may be relevant to damages. Dkt. No. 81. Citing *Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2001), plaintiffs argue that bifurcation is necessary to prevent prejudicial evidence bearing solely on the issue of damages from influencing the jury's consideration of liability. *Id.* at 4–5.

Defendants oppose bifurcation on the ground that bifurcation is unnecessary and will waste judicial resources. Dkt. No 114 at 2–4. Defendants' inefficiency arguments are not well taken. Indeed, if defendants prevail on the issue of liability, bifurcation would allow the Court, the parties, and jury to avoid consideration of damages altogether. Defendants do not otherwise contend that bifurcation will prejudice their defense. *See* Dkt. No. 119 at 120:14–121-6.

The Court is persuaded that bifurcation of liability and damages is the most effective way to ensure that evidence not relevant to liability and which may be unduly prejudicial to Mr. Alvarez is not permitted to influence the jury's determination of liability. *See Diaz*, 840 F.3d at 603 (bifurcation appropriate where evidence relevant only to damages may unfairly prejudice jury's consideration of liability). Accordingly, the Court will exercise its discretion to bifurcate in this case.

///

**IT IS SO ORDERED.**

Dated: March 27, 2020

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge